WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Chisholm,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-19-08010-PCT-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Jason Chisolm's ("Claimant") appeal from the denial of his application for social security disability benefits. The matter is fully briefed, (Docs. 13-15), and the Court now rules on it.

**I.**       **BACKGROUND**

    **A. Disability Determination**

To qualify for benefits, an applicant must first show he is "under a disability." 42 U.S.C. § 423(a)(1)(E). If he shows he suffers from a medically determinable physical or mental impairment that prohibits him from engaging in any "substantial gainful activity," the applicant is disabled. *Id.* § 423(d)(1)–(2).

By rule, the Social Security Administration ("SSA") has created a five-step process for an Administrative Law Judge ("ALJ") to determine whether the applicant meets the statutory definition of disability. 20 C.F.R. § 404.1520(a)(1). This process may end at any step at which the ALJ can find the applicant disabled or not. *Id.* § 404.1520(a)(4). At step one, the ALJ determines whether the applicant is "doing substantial gainful activity." *Id.* §

404.1520(a)(4)(i). If so, the applicant is not disabled. *Id.* If he is not, the ALJ proceeds to step two and considers whether any of the applicant's physical or mental impairment or combination of impairments are "severe." *Id.* § 404.1520(a)(4)(ii). If that threshold is met, the ALJ proceeds to step three to determine whether the applicant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the applicant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the applicant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most an applicant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). At step four, the ALJ uses the RFC to determine whether the applicant can still perform his "past relevant work." *Id.* § 404.1520(a)(4)(iv). If so, the applicant is not disabled. If not, the ALJ proceeds to the final step to determine whether—considering the applicant's RFC, age, education, and work experience—he "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v).

### B. The ALJ's Decision

In this case, the ALJ found that Claimant was not engaged in substantial gainful activity at step one. (Doc. 12-3 at 18). At step two, the ALJ found that Claimant had the following severe impairments:

> right shoulder impingement; degenerative joint disease of the right knee; bilateral hip arthralgia with a history of labral tears, status-post debridements; obesity; anxiety disorder, not otherwise specified, adjustment disorder with anxiety and depressed mood; nightmare disorder; anxiety due to medical illness; posttraumatic stress disorder (PTSD); and migraines.

(*Id.* at 19). The ALJ next determined that none of these impairments met or medically equaled anything in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.*). Before proceeding to step four, the ALJ found that—subject to various conditions—Claimant had the requisite RFC to "perform light work" under 20 C.F.R. § 404.1567(b). (*Id.* at 21-31). To make that determination, as pertinent here, the ALJ assigned little weight to the opinions of Dr. Colin Joseph and Dr. John Gilliam—who both treated Claimant. (*Id.* at 29-30). The ALJ also did not accept Claimant's allegations concerning the intensity of his hip and knee pain. (*Id.* at 27). Finally, the ALJ assigned little weight to a United States Department of

Veterans Affairs ("VA") rating decision assessing Claimant disabled. (*Id.* at 31). The ALJ ultimately concluded that Claimant could not perform his past relevant work but could make an adjustment to other work because, accounting for all his limitations, he could still "perform the requirements of representative occupations such as a router." (*Id.* at 33).

## II. ANALYSIS

### A. Standard of Review

This Court may overturn the ALJ's denial of disability benefits only if it is premised on legal error or unsupported by substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). To determine whether substantial evidence exists, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, the Court must uphold the ALJ's decision even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Because harmless error principles apply in this context, the Court upholds the ALJ when the record makes clear that any error was "'inconsequential to the ultimate nondisability determination,' or 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted). The Court "review[s] only the reasons provided by the ALJ in the disability determination," however, "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Revels*, 874 F.3d at 654 (quoting *Garrison*, 759 F.3d at 1010); *see Trevizo v. Berryhil*, 871 F.3d 664, 677 &

n.4 (9th Cir. 2017) (explaining that the district court erred by looking to the record and developing its own reasons to discredit a medical opinion); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (explaining that if an agency order's validity depends on a determination "which the agency alone is authorized to make and which it has not made . . . a court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency").

**B. Opinions of Claimant's Treating Psychologist and Treating Physician**

Claimant first argues that the ALJ's reasons for assigning little weight to the opinion of his treating psychologist, Dr. Colin Joseph, and his treating physician, Dr. John Gilliam, are legally insufficient. (Doc. 13 at 5-13). The Commissioner maintains that the ALJ considered proper factors under the applicable regulations when assigning these opinions little weight. (Doc. 14 at 4-11).

"The medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record.'" *Revels*, 874 F.3d at 654 (quoting 20 C.F.R. § 404.1527(c)(2)). When it is not controlling, the ALJ should weigh the opinion "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)–(6)). The ALJ must also consider any other factors tending "to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(6). Where, as here, the record contains conflicting medical opinions, the ALJ may reject a treating doctor's opinion if the ALJ provides, "specific and legitimate reasons that are supported by substantial evidence," which generally requires "setting out a detailed and thorough summary of the facts and conflicting evidence, stating [her] interpretation thereof, and making findings." *Id.* (first quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008), and then quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

**i. Dr. Colin Joseph**

The ALJ reviewed two of Dr. Joseph's opinions, but Claimant objects only to her treatment of the second. (Doc. 13 at 5-7). Dr. Joseph opined that Claimant: had impairments or treatment needs that would require his absence from work more than three times a month; "had extreme limitations in completing a normal workday and workweek without interruptions from psychologically based symptoms, extreme limitations in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and extreme limitations in dealing with normal work stress;" and displayed "extreme limitations in interacting appropriately with the general public and in maintaining socially appropriate behavior." (Doc. 12-11 at 144-46). The ALJ assigned the opinion little weight based on its inconsistency with other evidence in the record, including the roughly contemporaneous observations of Ms. Janet Schoen (who conducted "mental status examinations" with Claimant), Claimant's recent experience working as a taxi driver and dispatcher, and records showing Claimant's conditions improved with medication and after his divorce. (Doc. 12-3 at 29). The ALJ also afforded little weight to Dr. Joseph's opinion because he lacked "program knowledge." (*Id.*)

Citing *Trevizo*, 871 F.3d at 676, Claimant argues that the ALJ erred because she did not explicitly state she considered whether Dr. Joseph's opinion was entitled to weight as a specialist in the field under 20 C.F.R. § 404.1527(c)(5). (Doc. 13 at 7). An ALJ need not expressly state she considered all factors when her decision clearly indicates that she did. *Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018). Here, the ALJ's application of the factors under 20 C.F.R. § 404.1527(c)(2)–(6) is distinguishable from the ALJ in *Trevizo* who omitted that analysis. *Trevizo*, 871 F.3d at 676 (explaining that the ALJ only "suggested" that the medical opinion was inconsistent with other evidence and "did not consider" the other factors under the regulation). Not only did the ALJ state that she did "consider[] opinion evidence in accordance with the requirements of" 20 C.F.R. § 404.1527, she also expressly noted Dr. Joseph's credentials and the kind of treatment he provided to Claimant. (Doc. 12-3 at 21, 25, 27, 29). Thus, contrary to Claimant's suggestion, the ALJ's decision indicates that she considered whether Dr. Joseph's status as

a specialist entitled his opinion to additional weight. Moreover, to evaluate Dr. Joseph's opinion, the ALJ also considered its consistency with the record, Claimant's statements that undermined it, the improvement of Claimant's ability to cope with stress over time, and indicated that Claimant's experience with Ms. Schoen began before, and extended after, his treating history with Dr. Joseph, (Doc. 12-3 at 26-27), all appropriate considerations for assessing the weight to assign the medical opinion. 20 C.F.R. §§ 404.1527(c)(2), (4), (6). Thus, the Court does not find that the ALJ neglected the appropriate factors when assessing Dr. Joseph's opinion. Instead, the ALJ fully complied with her obligation to "set[] out a detailed and thorough summary of the facts and conflicting evidence, stat[e] [her] interpretation thereof, and mak[e] findings." *Revels*, 874 F.3d at 654 (quoting *Magallanes*, 881 F.2d at 751).[1]

Claimant also argues that the ALJ erred when assessing Dr. Joseph's opinion by citing evidence that was not inconsistent with that opinion. (Doc. 13 at 8-11). But substantial evidence supports the ALJ's determination. For example, the ALJ cited evidence that Claimant informed Ms. Shoen several times that, in his work as a taxi driver and dispatcher, he interacted well with coworkers and customers alike—at odds with Dr. Joseph's opinion that he could not. (Docs. 12-3 at 27; 12-12 at 102, 117, 119). Ms. Shoen's repeated observation that Claimant exhibited "good grooming, normal speech, logical and linear thoughts, a grossly intact memory, and fair to good insight and judgment" supplied yet more inconsistent evidence regarding his ability to get along with coworkers or the general public. (*See, e.g.*, Doc. 12-12 at 87, 95, 103, 116). Finally, the ALJ cited record evidence demonstrating that Claimant's ability to cope with stress had been improving,

---

[1] Claimant also faults the ALJ for discrediting Dr. Joseph's testimony for lack of program knowledge, claiming this was not a proper factor to consider. Claimant also contends this characterization was false, citing several cases where Dr. Joseph conducted examinations of social security claimants. *Wetzel v. Comm'r of Soc. Sec. Admin.*, No. CV-17-08117-PCT-BSB, 2018 WL 2753152, at *4 (D. Ariz. June 8, 2018); *Martinez v. Comm'r of Soc. Sec. Admin.*, No. CV-17-0089-PHX-DMF, 2017 WL 5000332, at *7 (D. Ariz. Nov. 2, 2017); *Stroup v. Acting Comm'r of Soc. Sec. Admin.*, No. CV-16-01804-PHX-ESW, 2017 WL 3276523, at *9 (D. Ariz. Aug. 2, 2017). Lack of program knowledge is specifically listed as a factor the ALJ may consider under 20 C.F.R. § 404.1527(c)(6), but the ALJ did not explain why Dr. Joseph lacked program knowledge here. Because the ALJ provided multiple valid reasons to discount the testimony supported by substantial evidence, any error on this basis was harmless.

which directly contradicts Dr. Joseph's opinion that he could not deal with normal workplace stress. (Docs. 12-10 at 192; 12-12 at 99). In the end, Claimant's argument asks this Court to view the evidence in a different light than did the ALJ. But this Court must defer to the ALJ's interpretation of the evidence when it is supported by reasonably drawn inferences, *see Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), and thus this argument fails.

Because the ALJ provided an extensive review of the medical evidence and specifically identified and explained which evidence justified assigning lesser weight to Dr. Joseph's opinion—its inconsistency with Ms. Shoen's observation's, records of Claimant's improvement in response to medication, and Claimant's own statements—she articulated specific and legitimate reasons to assign little weight to Dr. Joseph's opinion.

### ii. Dr. John Gilliam and Nurse Cindy Brown

The ALJ also reviewed the opinion of Dr. John Gilliam and Nurse Cindy Brown. (Doc. 12-3 at 30). Together, they opined that Claimant had the following physical limitations: (1) he could only "sit, stand, and walk for less than two hours in an eight-hour work day;" (2) would need to "walk every fifteen minutes for ten minutes at a time;" (3) he would need "to take unscheduled breaks once every ninety minutes;" (4) he could only "lift and carry ten pounds frequently and occasionally;" (5) he would need to miss work because of his impairment "more than four times per month;" and (6) he could stoop five percent of the workday but never crouch. (Docs. 12-3 at 30; 12-11 at 138-41). For several reasons, the ALJ assigned this opinion only little weight. Claimant identifies three of these reasons and asserts that they do not support the ALJ's treatment of this medical opinion. (Doc. 13 at 12-13).

Claimant first argues that the ALJ erred in assigning this opinion little weight because his "part-time work as a taxi driver is not inconsistent with a claim of disability." (Doc. 13 at 12). The inconsistency between Claimant's own statements and his physicians' opinion was a factor the ALJ could consider in deciding what weight to accord that opinion. 20 C.F.R. § 404.1527(c)(4). As with Dr. Joseph's opinion, Claimant's part-time taxi work

could reasonably be viewed as inconsistent with Dr. Gilliam and Nurse Brown's opinion concerning the acute nature and extent of Claimant's physical limitations.

Claimant next argues that the ALJ erred by considering the fact that Claimant was examined only once, and only by Nurse Brown. (Docs. 13 at 12; 12-13 at 47-49). But the ALJ may properly consider the frequency, nature, and extent of the treating relationship to weigh a treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2)(i)–(ii). Therefore, the ALJ was entitled to assign less weight to Dr. Gilliam and Nurse Brown's opinion because the record shows they examined Claimant just once.

Finally, Claimant argues that the ALJ erred in relying on Dr. Robert K. Gordon's observation that Claimant "could pick up small coins with both hands without difficulty and screw a nut onto a bolt without difficulty" to assign less weight to Dr. Gilliam's opinion. (Doc. 13 at 12). Specifically, Claimant argues that Dr. Gordon's findings were not inconsistent with Nurse Brown and Dr. Gilliam's opinion because "Dr. Gilliam did not find [Claimant's] manipulative abilities impaired in general, only impaired following *repetitive* reaching, handling, or fingering." (Docs. 12-11 at 141; 13 at 12). However, this was but one of many factors that the ALJ considered in assigning less weight to Dr. Joseph's opinion. (Doc. 12-3 at 30). Having already concluded that the opinion was entitled to less weight because Dr. Gilliam and Nurse Brown had examined Claimant just once, and that some of their conclusions were inconsistent with other medical evidence that showed Claimant's gait was routinely found normal (a reason given by the ALJ that Claimant does not quarrel with), it was not error for the ALJ to also conclude that Dr. Gordon's more detailed observations following a physical exam were entitled to greater weight than Dr. Gilliam and Nurse Brown's opinion with regard to Claimant's fine motor skills. *See* 20 C.F.R. § 404.1527(c)(3), (4); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (explaining that an examining physician's independent clinical findings may be substantial evidence).

Accordingly, the Court finds that the ALJ provided specific and legitimate reasons to assign little weight to these medical opinions.

## C. Claimant's Subjective Symptom Testimony

Claimant next argues that the ALJ's assessment of his subjective symptom testimony is not based on substantial evidence, contending the ALJ's record cites do not support her reasons for rejecting it. (Doc. 13 at 17-18). He also appears to argue that the ALJ erred in even considering objective medical evidence when discounting his subjective symptom testimony. (*Id.* at 18). Claimant finally contends the ALJ gave impermissible "general findings" by failing to specifically identify his "complaints" that are inconsistent with evidence of his normal gait and station and recent work as a taxi driver. (*Id.* at 19). In response, the Commissioner argues that the ALJ's evaluation of Claimant's subjective pain testimony was proper in all respects. (Doc. 14 at 14-19).

An ALJ's credibility assessment of subjective symptom testimony proceeds in two steps. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At step one, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)). If the claimant does so, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281, 1283–84). To make this assessment, the ALJ may rely on numerous factors but cannot discredit a claimant's testimony solely because it was not substantiated by objective medical evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ found Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," satisfying step one, but she rejected Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms" because they were "not entirely consistent with the medical evidence and other evidence in the record." (Doc. 12-3 at 26-27). The ALJ first reasoned that the MRIs of Claimant's right knee, which "was essentially normal," and right hip, which "demonstrated minimal . . . joint fluid or effusion," were inconsistent with his allegations

concerning the intensity of his pain. (Doc. 12-3 at 27). Contrary to Claimant's assertion, the ALJ could properly consider this objective medical evidence at step two of her analysis, so long as it was not the only factor she considered.[2] Although Claimant maintains that the ALJ did not cite record evidence containing MRI findings, he points to citations that were used as support for an entirely different proposition—that Claimant was regularly noted as having a normal gait and station in his physical examinations. (Doc. 12-3 at 27). The Court has independently source checked the ALJ's record cites for her assertion that the MRIs are not consistent with high intensity pain and finds that they support that proposition. (Docs. 12-12 at 12, 121; 12-13 at 53).

In addition to considering this objective medical evidence, the ALJ also appropriately found Claimant's subjective symptom testimony inconsistent with his experience working as a taxi driver and acting as a dispatcher during the relevant timeframe. (Docs. 12-3 at 27; 12-12 at 102, 117, 119). The ALJ may discount a claimant's subjective symptom testimony when his activities indicate that he possesses "capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113. Here, the Claimant testified before the ALJ that he was unable work for various reasons, including high pain levels. (Doc. 12-3 at 22, 48 (hearing testimony)). The ALJ could reasonably conclude that Claimant's pain was not serious enough to prevent him from working entirely, given that he worked multiple nights a week as a taxi driver or dispatcher after his claimed date of disability. *See id.* ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Claimant's remaining argument, that the ALJ's findings are impermissible general findings, also fails. (Doc. 13 at 19). Claimant faults the ALJ for "failing to identify specific testimony," contending this renders her credibility determination a general finding under

---

[2] Claimant misreads Social Security Ruling 16-3p as requiring otherwise, but the ruling states only that the ALJ cannot consider how well supported the severity of an impairment is at step one of the credibility analysis. SSR 16-3p, 2017 WL 5180304, at *3. Indeed, the ruling later makes clear that objective medical evidence must still be considered at step two. *Id.* at *4.

*Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). There, however, the ALJ not only failed to identify the testimony that was not credible but also failed to provide any specific reasons to support her general non-credibility conclusion. *Id.* at 493. As the foregoing discussion demonstrates, the ALJ here both identified Claimant's hearing testimony that he could not work because of his pain and provided specific reasons as to why she did not find that testimony credible.[3] The Court does not find, as Claimant suggests, that the ALJ's reasoning lacks the requisite specificity simply because it does not quote him.

Accordingly, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for not accepting Claimant's subjective symptom testimony.

**D. VA Rating Decision**

Claimant argues that the ALJ erred by rejecting the VA's disability findings, (*see* Doc. 12-6 at 6-30), because she neither acknowledged certain impairments listed in its rating decision nor adequately explained why she discounted the VA's findings. (Doc. 13 at 13-16). The Commissioner responds with a variety of arguments, including that: (1) the ALJ adequately explained why she did not assign more weight to the VA's findings; (2) the ALJ was not required to discuss the VA's findings because the impairments were not "established through medical evidence;" (3) Claimant did not raise these specific impairments to either the ALJ or the Appeals Council; (4) the VA's rating related to Claimant's Meniere's syndrome[4] was undercut by record evidence, including Plaintiff's own denial of certain symptoms; and (5) any error in not considering the finding on Claimant's Meniere's syndrome was harmless error because nothing in the record supports

---

[3] In a related argument, Claimant appears to argue that the ALJ's reason is a non sequitur because evidence of his normal gait and station or that he worked as a taxi driver, was not relevant to his testimony about his lack of sleep. (Doc. 19 at 18-19). But these factors were clearly discussed while the ALJ was analyzing the level of pain that Claimant's physical impairments caused him.

[4] "Meniere's disease is a disorder of the inner ear that causes spontaneous episodes of vertigo—a sensation of a spinning motion—along with fluctuating hearing loss, ringing in the ear (tinnitus), and sometimes a feeling of fullness or pressure in your ear." *Sorber v. Comm'r of Soc. Sec. Admin.*, 362 F. Supp. 3d 712, 722 n.5 (D. Ariz. 2019) (citation and quotations omitted).

it and the representative occupation found at step five, "router," is rated quiet. (Doc. 14 at 11-14).

The ALJ must not only consider a VA rating decision but also, ordinarily, give it great weight. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). The Ninth Circuit Court of Appeals has "found great weight to be ordinarily warranted 'because of the marked similarity between these two federal disability programs.'" *Luther*, 891 F.3d at 876 (quoting *McCartey*, 298 F.3d at 1076). The VA's rating is not necessarily conclusive on the ALJ; rather, the ALJ may "give less weight to a VA rating 'if [she] gives persuasive, specific, valid reasons for doing so that are supported by the record.'" *Id.* at 876–77 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009)).

To comply with *McCartey*, "[s]imply mentioning the existence of a VA rating . . . is not enough." *Luther*, 891 F.3d at 877. Nor is an unadorned statement distinguishing a VA rating "on the general ground that the VA and SSA disability inquiries are different." *Valentine*, 574 F.3d at 695. Instead, the ALJ must "address how she . . . considered and weighed the VA's rating [and] articulate . . . reasons for rejecting it." *Luther*, 891 F.3d at 877. For example, the ALJ may be "justified in rejecting the VA's disability rating on the basis that she had evidence the VA did not, which undermined the evidence the VA did have." *Valentine*, 574 F.3d at 695. When the ALJ relies on medical evidence to distinguish a VA rating, the ALJ need not discuss that evidence anew if she describes that evidence elsewhere. *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010).

The ALJ here recognized that the VA "evaluated and assessed a disability rating" to Claimant but gave that decision little weight, reasoning in part that:

> The VA evaluation and the Social Security disability program are individual programs, each with its own standard for establishing "disability." An evaluation by the VA does not necessarily equate to a finding of "disability" under the Social Security Act, but the VA evaluation has been considered. In the instant case, VA evaluation assesses percentages but there are no specific findings regarding functional limitations per se, which may correspond directly to Social Security Administration standards for the purpose of finding disability under the Act.

(Doc. 12-3 at 31). This explanation, however, merely "distinguishe[s] the VA's disability

rating on the general ground that the VA and SSA disability inquiries are different," and thus does not furnish a persuasive, specific, and valid reason for discounting the VA's rating. *Valentine*, 574 F.3d at 695; *see also Whimper-Sullivan v. Comm'r of Soc. Sec. Admin.*, No. CV-17-02618-PHX-DLR, 2018 WL 4501589, at *3 (D. Ariz. Sept. 20, 2018) (ALJ explanation that VA does "not make a function-by-function assessment of an individual's capabilities . . . or determine whether the claimant is able to perform either his past relevant or other work" was an inadequate reason to give little weight to the VA's disability rating); *Rigole v. Berryhill*, No. 6:15-cv-02072-JE, 2017 WL 4839075, at *5 (D. Or. Oct. 26, 2017) (ALJ explanation that the VA rating contains "no direct correlation between the assessed percentage and functional limitations" did not comply with *McCartey* because it was "no more than a generalized observation of the fact that the VA and SSA disability ratings differ").

The ALJ also offered a second reason to support her decision to assign the VA's rating decision little weight, explaining she gave "more weight to the objective medical evidence, such as the claimant's right knee and hip MRI's, which more accurately describe the [C]laimant's impairments and limitations." (Doc. 12-3 at 31). As explained more fully below, this is a persuasive, specific, and valid reason for disagreeing with the VA about the effects of Claimant's hip and knee impairments but does not justify rejecting the VA rating decision in its entirety. *See Berry*, 622 F.3d at 1236 (remanding where the ALJ gave sufficient reasons for only some of the impairments addressed in the VA rating decision); *Robert H.*, *v. Berryhill*, No. 3:17-cv-05691-TLF, 2018 WL 5292368, at *8 (W.D. Wash. Oct. 25, 2018) (finding error, inter alia, where the ALJ failed to address all VA ratings); *Odaniell v. Comm'r of Soc. Sec. Admin.*, No. CV-16-04072-PHX-JAT, 2017 WL 4784582, at *1–2 (D. Ariz. Oct. 24, 2017) (reversing and remanding where the ALJ offered only an incomplete recounting of the VA's disability ratings).

First, the ALJ discussed the VA's rating at the conclusion of her extensive review of the medical evidence in the record. (Doc. 12-3 at 31). As discussed previously, that evidence could support a finding that Claimant's symptoms were not so limiting that he

could not perform any substantial gainful activity. In addition, the ALJ's review of the evidence indicated that the objective medical evidence to which she referred, such as the MRIs, were produced as a result of examinations that were more recent in time than the VA's rating decision. Thus, the record supports the ALJ's assertion that this evidence provides a "more accurate" description of Claimant's impairments and limitations with regard to his hip and knee and provides a sufficient reason to assign the VA rating less than great weight.

The VA's disability rating, however, was based on multiple grounds. But the ALJ did not address several of them—Claimant's Meniere's syndrome, gastroesphageal reflux disease, and partial mental sensory neuropathy—in her order. (Doc. 12-6 at 6, 7, 11-12). Had the ALJ engaged with the bases underlying the VA's ratings, the failure to mention these impairments might have been harmless. *Cf. Uthe v. Berryhill*, No. CV 16-3524-PHX-DGC, 2017 WL 4573620, at *3 (D. Ariz. Oct. 13, 2017). But the ALJ here did not do so, leaving the Court unable to determine whether the ALJ complied with her duty under *McCartey* to consider each of the bases for Claimant's VA disability rating.

The Commissioner attempts to argue that reversing the ALJ for failing to consider these three impairments is nonetheless unwarranted; however, these arguments are unavailing. Given that the ALJ did not even mention these impairments, the Court cannot accept the Commissioner's argument to uphold the decision on the grounds that the impairments listed were not "diagnose[d]" or "established through medical evidence," because doing so would require the Court to develop its own reasons to discredit the VA's rating decision. The same holds true for the Commissioner's argument that Claimant's own testimony undercut the VA's finding related to his hearing loss. Similarly, the Court cannot hold any error harmless on the grounds that the Dictionary of Occupational Titles assigns a rating of "quiet" to the representative occupation "router." The ALJ's hypothetical to the vocational expert referred only to a hypothetical person who must avoid extreme noise, (Doc. 12-3 at 63), thus the hypothetical did not encompass a person suffering from hearing loss nor any other symptom of Meniere's syndrome. It is not at all clear that a quiet

occupation is more suitable for a person with difficulty hearing.

Finally, the Court finds unpersuasive the Commissioner's apparent assertion that Claimant cannot now complain of the ALJ's failure to consider each impairment listed in the VA's rating decision because he did not specifically draw them to the ALJ's or the Appeals Council's attention. The Commissioner does not cite, and the Court has not found, any authority to support the proposition that an ALJ may ignore conditions described in the VA rating simply because an applicant does not specifically argue that specific condition caused his or her inability to work. To the contrary, because the VA rating before the ALJ discussed these impairments, the mere fact that the Claimant did not specifically mention them in his hearing would not have furnished even the ALJ with a persuasive, specific and valid reason for discounting a VA rating. *Underhill v. Berryhill*, 685 F. App'x 522, 522 (9th Cir. 2017). Indeed, the language of the relevant statutes and regulations indicate that the ALJ makes the disability determination based on all evidence contained in the record—as the VA rating decision was here. *See, e.g.*, 42 U.S.C. § 423(d)(5)(b); 20 C.F.R. §§ 404.1512, 404.1520, 404.1521. Thus, the Court cannot affirm the ALJ's order on this basis.

Accordingly, because the ALJ gave persuasive, specific, and valid reasons supported by the record for disagreeing with only some aspects of the VA's disability rating, and the record does not clearly show that a finding of disability or nondisability would be required if the entire VA rating had been considered, the Court must remand for the ALJ to consider the VA's entire determination. *See Odaniell*, 2017 WL 47845582, at *2.

///
///
///
///
///
///

## III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion and the Clerk of the Court shall enter judgment accordingly.[5]

Dated this 30th day of October, 2019.

James A. Teilborg
Senior United States District Judge

---

[5] To the extent mandate is required, the judgment shall serve as the mandate.